# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

VICTORIA MORRIS,  :

              Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.  :

Case No. 3:09-cv-203

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial

resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on March 8, 2005, alleging disability from January 27, 2005, due to back, neck, and head impairments, anxiety, depression, and headaches. (Tr. 51-53; 451-53; 70). Plaintiff's applications were denied initially and on reconsideration. (Tr. 36-38; 40-42; 455-57; 459-61). Administrative Law Judge Thomas McNichols held a hearing, (Tr. 467-511), following which he determined that Plaintiff is not disabled. (Tr. 12-28). The Appeals Council denied Plaintiff's request for review, (Tr. 7-10), and Judge McNichols' decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that she has severe degenerative disk disease and depression, but that she does not have an impairment or combination of impairments that meets or equals the Listing. (Tr. 17, ¶ 3; Tr. 17, ¶ 4). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 20, ¶ 5). Judge McNichols then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and found that there is a significant number of jobs in the economy that Plaintiff is able to perform. (Tr. 27, ¶ 10). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 28).

Plaintiff sustained a work-related injury on December 28, 2004, which resulted in a left buttock contusion and left lumbosacral strain. (Tr. 185). From January through May, 2005, Plaintiff was treated with medications and participated in physical therapy. *See, e.g.,* Tr. 136; 153; 170-87; 298. During that time, it was noted that Plaintiff complained of low back pain radiating into her left leg and she demonstrated positive straight leg raising on the left and a reduced range of lumbar spine motion. *Id.*

An MRI of Plaintiff's lumbar spine performed on February 10, 2005, revealed

4

moderately severe degenerative changes in the low thoracic spine, early degenerative changes at the L1-L2 and L2-L3 levels, and facet arthropathies at the L4-L5 and L5-S1 levels. (Tr. 160).

The record contains the office notes of treating psychiatrist Dr. Morentz dated March 31 through September 13, 2005. (Tr. 205-17; 300-12). Those notes reveal that when Dr. Morentz first evaluated Plaintiff, he reported that her anxiety level was high, her attention and concentration were markedly impaired, her face, voice, and posture reflected depression, she was very tense, and that her speech was normal. *Id.* Dr. Morentz also reported that Plaintiff's thinking was normal, her memory was impaired by the attention defect, she was oriented, her insight was fair, and her judgment was good. *Id.* Dr. Morentz identified Plaintiff's diagnoses as depression NOS and mood disorder secondary to pain and he assigned her a GAF of 56. *Id.* Dr. Morentz determined that Plaintiff was moderately to markedly limited in most of her abilities to perform work-related mental activities. *Id.* On August 17, 2005, Dr. Morentz reported that he saw Plaintiff every twelve weeks, that she had slight improvement in her depression, limited but satisfactory ability to interact with the general public, and very good to unlimited abilities to maintain socially appropriate behavior, that her psychiatric condition did not exacerbate her experience of pain, and that her diagnoses were depression NOS and mood disorder secondary to pain. *Id.* Dr. Morentz also reported that Plaintiff had marked or extreme difficulty in maintaining concentration and persistence in tasks, and that she had a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of her ability to do basic work activities. *Id.*

Examining psychologist Dr. Berg reported on May 21, 2005, that Plaintiff completed the ninth grade and later earned her GED, appeared to be functioning in the low-average range of intelligence, her judgment appeared fairly good, her insight was fair, she appeared slightly to mildly

5

anxious, and mildly to moderately depressed, and that her general orientation was satisfactory. (Tr. 191-95). Dr. Berg also reported that Plaintiff functioned in a moderate to moderately slow manner, seemed under slight stress, did not appear to be in any significant physical pain or discomfort although she remained seated and was not required to do strenuous or repetitive activity, and that there was no evidence of psychosis. *Id.* Dr. Berg identified Plaintiff's diagnosis as depressive disorder with mild anxiety and he assigned her a GAF of 57. *Id.* Dr. Berg opined that Plaintiff had no limitations in her ability to understand and follow simple directions, mild to moderate limitations in her ability to maintain attention and concentration, moderate limitations in her ability to relate adequately with others, moderate limitations in her ability to cope with routine job stresses, and moderate limitations in her ability to sustain her level of activity in a work setting. *Id.*

The record contains the office notes of treating physician Dr. Wilson dated October 25, 2005, through April 28, 2008. (Tr. 244-61; 392-431). Those records reveal that Dr. Wilson treated Plaintiff for various medical conditions and complaints including back pain, neck pain, degenerative disc disease, lumbosacral radiculopathy, depression, insomnia, memory loss, and headaches. *Id.*

An MRI of Plaintiff's cervical spine performed on May 30, 2006, revealed mild degenerative spondylosis with mild disc bulges at each level from C3 through C7. *Id.* An MRI of Plaintiff's lumbar spine also performed on May 30, 2006, revealed mild diffuse disc bulges throughout the visualized lower thoracic and lumbar levels without significant canal or foraminal narrowing and mild degenerative facet disease at L1-2 with evidence of apophysitis. *Id.*

The transcript contains the office notes of treating psychiatrist Dr. Yakhmi dated October 24, 2005, through March 21, 2006. (Tr. 442-45). Those records reveal that on November

6

21, 2005, Dr. Yakhmi noted that Plaintiff was anxious and depressed, had normal speech, reported auditory hallucinations, had a fair memory, displayed obsessive/compulsive behaviors, and that her diagnosis was major depression with psychosis. *Id.* On December 13, 2005, Dr. Yakhmi noted essentially the same observations that he had previously noted. *Id.*

Plaintiff attended a crisis assessment on December 13, 2005, at Mental Health Services for Clark and Madison Counties. The counselor who evaluated Plaintiff reported that her facial expressions were inappropriate in that she had poor eye contact, her speech was circumstantial, convoluted, and rambling, she was oriented, her recent memory was impaired, and that her thought content was unremarkable. (Tr. 434-41). The counselor also reported that Plaintiff's though process was circumstantial and tangential with loose associations, her mood was depressed, and her insight and judgment were limited. *Id.* The counselor identified Plaintiff's diagnosis as depressive disorder NOS and she assigned Plaintiff a GAF of 45. *Id.* On December 21, 2005, the counselor completed a psychosocial assessment in which she reported that Plaintiff had been in and out of mental hospitals and treatment all of her life and was currently in psychiatric treatment. (Tr. 293-97). The counselor also reported that Plaintiff was alert and oriented, was rather anxious, made poor eye contact at times, her affect and mood were intact, her thought processes were clear, she did not present as having any hallucinations, and that her judgment and insight were fair. *Id.* The counselor noted that Plaintiff's diagnoses were depressive disorder NOS, rule out post-traumatic stress disorder, chronic, and personality disorder NOS. *Id.*

Plaintiff subsequently received mental health treatment at Mental Health Services for Clark and Madison Counties from December 21, 2005, through June 27, 2006. (Tr. 278-92). Plaintiff's treatment notes indicate that she attended counseling sessions with a mental health

7

therapist and that her medications were managed by Dr. Vishnupad. *Id.* On October 26, 2006, Dr. Vishnupad reported that he had been treating Plaintiff since April 14, 2006, her diagnoses were major depression, recurrent, with psychotic symptoms and post-traumatic stress disorder, she had problems with concentration and focusing, her mood was mostly depressed, and that she had exhibited marked or extreme difficulties in several areas of activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (Tr. 267-77).

Plaintiff consulted with Dr. Southworth on March 10, 2006. He reported that Plaintiff was in mild acute distress, had some straightening and stiffness of her back when she got out of the chair, had mild to moderate tenderness over the lumbar spine in both paraspinal areas, and had a decreased and painful range of motion of her back. (Tr. 313-15). Dr. Southworth also reported that Plaintiff had moderate tenderness over the SI joints, tenderness of the left posterior hip and pelvis, multiple areas of tenderness in the left gluteal muscle, a stiff and antalgic gait favoring the left leg, was unable to squat down, and had decreased strength against resistance in both legs. *Id.* Dr. Southward identified Plaintiff's diagnosis as lumbar strain and she opined that there was nothing she could add to Plaintiff's treatment and recommended treatment with a pain management specialist. *Id.*

Plaintiff participated in physical therapy from June 28, 2006, through August 28, 2006. (Tr. 316-23). The records from that therapy reveal that Plaintiff complained of cervical, thoracic, and low back pain. *Id.* Plaintiff was discharged from therapy secondary to non-compliance. *Id.*

A nerve conduction study performed on November 27, 2006, was consistent with a left L5 radiculopathy or a left peroneal or a sciatic nerve lesion. (Tr. 421-24).

The transcript contains the office notes of physical medicine physician Dr. Redd dated March 9 through December 11, 2007. (Tr. 381-88). Dr. Redd reported on March 9, 2007, that Plaintiff was in no acute distress, had a normal range of motion of her cervical spine which reproduced some of her pain, and that her neurological examination was normal. *Id.* Dr. Redd also reported that Plaintiff had some muscle tightness in the upper trapezius ridge and also extending into the posterior occiput. *Id.* Dr. Redd identified Plaintiff's diagnosis as cervical degenerative disease and she recommended the use of a Lidoderm patch. *Id.* Dr. Redd continued to report that Plaintiff's physical exam was unchanged and that Plaintiff had experienced relief with the Lidoderm patch. *Id.*

Dr. Abraham, who is associated with the Springfield Surgical Center Pain Clinic, reported on January 8, 2008, that Plaintiff's motor and sensory examinations were within normal limits and that she had a full range of motion of her shoulders and neck. (Tr. 389). Dr. Abraham's clinical impression was chronic cervical radiculopathy and chronic lumbar radiculopathy and degenerative disk disease, and he opined that Plaintiff was a good candidate for cervical epidural steroid injections. *Id.*

In her Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to obtain an updated medical expert opinion regarding medical equivalency, by failing to give controlling weight to her treating physicians' opinions, and by giving inadequate consideration to her credibility, and by relying on the VE's testimony because it was in response to an improper hypothetical question. (Doc. 9).

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to obtain an updated medical expert opinion regarding medical equivalency because the reviewing

9

physicians and psychologists did not have the opportunity to consider the evidence from Drs. Morentz, Yakhmi, and Vishnupad, as well as from Plaintiff's counselor. Plaintiff's position seems to be that the Commissioner should have gotten updated opinion as to whether she equals Listing 12.04 because Dr. Vishnupad opined that she met the "C" criteria of that Listing.

> Social Security Ruling 96-6P provides in part:
>
> ...
> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents [various documents on which medical and psychological consultants may record their findings] signed by a State agency medical or psychological consultant. However, an administrative law judge and the Appeals Council must obtain an updated medical opinion form a medical expert ... in the following circumstances:
>
>    *When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>    *When additional medical evidence is received that in the opinion of the Administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.
>
> ...

Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996) (SSR).

For the following reasons, this Court agrees that, in this case, the Commissioner failed to abide by SSR 96-6p.

The reviewing medical and mental health experts gave their findings and opinions on June 6, 2005, and October 27, 2005. (Tr. 219-26, 227-41A). As noted above, since those dates, additional medical and mental health evidence was made a part of the record. Included in the

additional mental health evidence are the office notes of treating psychiatrist Dr. Yakhmi, the evaluating and treating counselor at Mental Health Services for Clark and Madison Counties, and Plaintiff's treatment records from Mental Health Services for Clark and Madison Counties including treating psychiatrist Dr. Vishnupad's report and records. In contrast, at the time the consulting psychologists reviewed the record, the only mental health evidence available included the office notes of short-term treating psychiatrist Dr. Morentz and examining psychologist Dr. Berg's report.

A review of the record indicates that the bulk of the mental health evidence became a part of the record *after* the consulting psychologists reviewed the record. Indeed, Plaintiff did not begin long-term mental health treatment until after the reviewing psychologists issued their opinions. Additionally, the records from Plaintiff's treating counselor and treating psychiatrist suggest that Plaintiff's impairments may have met or equalled Listing 12.04C in severity.

This Court concludes that under these facts, the additional medical records could result in a modification of the findings and conclusions of the state agency medical consultants. *See Manus v. Commissioner,* No. C-1-08-243, 2009 WL 2983051, *10 (S.D. Ohio, Sept. 11, 2009) (Weber, J., adopting Report and Recommendations of Magistrate Judge Timothy Black).

Because the Commissioner relied on the reviewing psychologists' opinions in concluding that Plaintiff did not satisfy the Listings and the validity of those opinions are questionable in light of the subsequent mental health evidence, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole and should be reversed.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted.

11

The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the factual issues have been resolved in this case. Specifically, the Court finds that there is a question as to whether Plaintiff's satisfies the Listings thereby resulting in a finding of disability at the third step of the sequential evaluation process. Therefore, this matter should be remanded for any additional administrative proceedings necessary to make a determination as to whether Plaintiff is disabled. Those proceedings should include further fact finding in order for a medical expert to review the additional mental health evidence because such evidence could modify the findings of state agency medical consultants**.** *Manus***,** *supra.*

March 29, 2010.

                                               *s/ Michael R. Merz*
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).